Brandon J. Baxter (#9122)
PECK BAXTER WATKINS & BAILEY, LLC
399 North Main, Suite 300
Logan, Utah 84321
Telephone: (435)787-9700
Facsimile: (435)787-2455
bbaxter@peckbaxter.com
*Attorneys for the Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| BRENT BINGHAM,<br><br>   Plaintiff,<br><br>v.<br><br>PROGRESSIVE COMMERCIAL CASUALTY COMPANY and UNITED FINANCIAL CASUALTY COMPANY,<br><br>   Defendants. | **AMENDED COMPLAINT**<br>**and**<br>**JURY DEMAND**<br>**[TIER 3]**<br><br><br>Case No.: 1:22-cv-00148-CMR<br>Magistrate Judge Cecilia M. Romero |

COMES NOW Plaintiff BRENT BINGHAM ("Mr. Bingham"), by and through his counsel of record, Brandon J. Baxter and Peck Baxter Watkins & Bailey, LLC, and alleges against Defendants PROGRESSIVE COMMERCIAL CASUALTY COMPANY ("Progressive") and UNITED FINANCIAL CASUALTY COMPANY ("United") as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages arising out of Progressive's and/or United's failure to fulfill their obligations to Mr. Bingham under an auto insurance contract. The

obligation under the insurance contract arises out of injuries caused to Mr. Bingham by an underinsured automobile.

## PARTIES

2. At all times relevant to this matter, Mr. Bingham was a resident of Cache County, Utah.

3. At all times relevant to this matter, Progressive and United were insurance companies/carriers registered and licensed to do business in the State of Utah.

## JURISDICTION AND VENUE

4. The contract at issue in this action was entered into in Cache County, Utah. Jurisdiction is proper under Utah Code section 78A-5-102. Venue is proper under Utah Code section 78B-3-304.

## GENERAL ALLEGATIONS

5. At all times relevant to this matter, BTB Transportation Inc. ("BTB") was a Utah corporation with its headquarters in Cache County, Utah. BTB's employees and agents performed over-the-road trucking services.

6. At all times relevant to this matter, BTB and Progressive and/or United were parties to a commercial auto insurance contract ("the insurance contract").

7. Under the terms of the insurance contract, BTB paid Progressive and/or United a premium for automobile insurance coverage. Part of BTB's premium included a payment for Underinsured Motor Vehicle Coverage ("UIM coverage").

8. BTB purchased UIM coverage from Progressive and/or United to provide insurance for its employee drivers in the event that an employee driver was involved in an

automobile crash and the at-fault party's insurance was insufficient to cover the employee's damages.

9. In return for BTB's payment of the UIM premium, Progressive and/or United agreed to compensate the drivers of BTB's vehicles for damages suffered in an automobile crash where the at-fault driver's own insurance coverage was insufficient to pay for the damages suffered by BTB's drivers.

10. Under the insurance contract with BTB, Progressive and/or United agreed to provide UIM coverage of up to $1,000,000 as a combined single limit for each incident.

11. At all times relevant, Mr. Bingham was an employee of BTB. Among his various duties, Mr. Bingham operated a BTB semi-truck and trailer over the road to and from the west coast including routes that passed through northern Nevada on Intersate-80.

## THE CRASH

12. At all times relevant to this matter, Herlo Trucking Inc. ("Herlo Trucking") was a company operating semi-trucks providing over the road trucking services in the western United States.

13. Prior to February 2019, prior iterations of Herlo Trucking had a checkered operational history. Herlo Trucking's authority with the Federal Motor Carrier Safety Administration had been revoked on multiple instances. There is documentation of multiple safety violations on the part of Herlo Trucking and its drivers.

14. In February 2019, Eniel Batista Carballo ("Mr. Batista-Carballo") was an employee driver for Herlo Trucking Inc.

15. In the late afternoon on February 18, 2019, Mr. Batista-Carballo was stopped in a Herlo Trucking semi-tractor and trailer on the side of eastbound Interstate-80 at mile marker 246 near Battle Mountain, Lander County, Nevada.

16. At 5:32 pm, Mr. Batista-Carballo put his truck in gear and proceeded to drive the Herlo Trucking semi-truck and trailer onto the freeway, occupying the eastbound lane of travel without any regard for oncoming traffic.

17. Mr. Batista-Carballo's actions were a violation of Nevada Revised Statutes section 484B.263 which governs the duty of drivers to yield the right-of-way when entering onto a controlled-access highway.

18. At this same time, a BTB semi-truck and trailer was eastbound on I-80 and arriving at mile marker 246 near Battle Mountain.

19. As Mr. Batista-Carballo pulled onto I-80 at a slow speed, he entered and effectively blocked the lane the BTB semi-truck and trailer were operating in.

20. After Mr. Batista-Carballo pulled onto I-80, the driver of the BTB semi-truck and trailer had no chance to stop or to avoid smashing into the back of the Herlo Trucking rig.

21. Rather than swerving into a different lane and causing a collision with other vehicles, the BTB driver maintained his lane of travel while attempting to brake and stop.

22. The BTB driver was unable to stop his tractor-trailer rig and smashed into the back of the Herlo tractor-trailer rig.

23. The impact of the crash and associated damage to the vehicles and the BTB driver was catastrophic.

24. Plaintiff Brent Bingham was the individual driving the BTB semi-truck and trailer that was forced to crash into the back of the Herlo semi-truck and trailer.

25. Mr. Bingham bears no fault or liability for the crash.

26. Mr. Bingham suffered catastrophic physical, mental, and emotional injuries as a result of the crash. Mr. Bingham continues to suffer from the consequences of the injuries caused by the crash.

## PLAINTIFF'S INJURIES & DAMAGES

27. Medical professionals have diagnosed Mr. Bingham with numerous injuries and limitations caused by the crash, including the following:

    - Laceration without foreign body of right cheek and temporomandibular area.
    - Partial traumatic amputation of right ear.
    - Laceration of muscle and tendon of head.
    - Fracture of skull/facial bones, left side.
    - Teeth 8, 9, 10, 12 and 13 fracture and chipping.
    - Intracranial injury with loss of consciousness. Glasgow coma scale score of 13-15 upon arrival at the emergency department.
    - Traumatic brain injury
    - Posttraumatic Stress Disorder, anxiety, sadness and emotional difficulties.
    - Headaches, balance problems, dizziness, visual problems, fatigue, sensitivity to light and noise, numbness/tingling, difficulties with concentration, memory and feeling mentally foggy. Also, difficulties with irritability and trouble sleeping.
    - Upper, mid and lower back pain and functional disabilities.
    - Laceration of right middle finger without foreign body.
    - Extensive facial scarring.

28. Mr. Bingham's medical professionals were correct in their diagnosis of Mr. Bingham's injuries as outlined above.

29. The medical professionals correctly identified the February 18, 2019 crash as the cause of these injuries.

30. The treatment which the medical professionals provided to Mr. Bingham for these injuries has been necessary and proper.

31. Medical experts indicate that, in the future, Mr. Bingham will continue to suffer numerous limitations and complications as a result of the crash.

32. Medical experts have identified the February 18, 2019 crash as the cause of Mr. Bingham's continued limitations and complications. The medical professionals are correct in their prognosis of Mr. Bingham's future limitations and complications.

33. The medical professionals are correct in identifying the February 18, 2019 crash as the cause of these future limitations and complications.

34. The medical experts indicate that, as a result of injuries and complications from the crash, Mr. Bingham will require substantial future medical treatment.

35. The medical professionals are correct in their identification of future medical care and treatment which Mr. Bingham will require as a result of injuries suffered from the crash. The medical professionals are correct in identifying the February 18, 2019 crash as the cause of this future medical treatment.

36. Mr. Bingham has suffered and will continue to suffer economic harms and losses as a result of the crash, including:

- Past medical expenses
- Future medical expenses
- Past lost earnings
- Future lost earning capacity

37. Mr. Bingham has suffered and will continue to suffer noneconomic harms and losses as a result of the crash, including:

- Limitations or inability to perform ordinary affairs
- Limitations on physical movement and abilities
- Loss of functional capacity
- Loss of society and companionship
- Impairment of family relationships
- Inconvenience
- Loss of enjoyment of life
- Reduced quality of life
- Increased risk of physical injury
- Pain and suffering

**FIRST CAUSE OF ACTION**
Breach of UIM Contract

38. Paragraphs 1 through 37 above are realleged and incorporated herein by reference.

39. At the time of the crash, BTB was insured with Progressive and/or United. Under the insurance contract with BTB, Progressive and/or United agreed to provide UIM coverage to BTB drivers of up to $1,000,000 as a combined single limit for each incident.

40. The insurance carrier for Mr. Batista-Carballo and Herlo Trucking paid its policy limits to resolve Mr. Bingham's third-party injury claims against Mr. Batista-Carballo and Herlo Trucking.

41. However, the amount of Mr. Batista-Carballo's and Herlo Trucking's insurance coverage was insufficient to fully compensate Mr. Bingham for his economic and noneconomic damages arising out of the crash.

42. At the time of the crash, Mr. Bingham was an insured under the UIM provisions of BTB's insurance policy with Progressive and/or United.

43. At the time of the February 18, 2019 crash, BTB had fully paid all premiums and had complied with all other terms required under the Progressive and/or United policy.

44. After settling his third-party injury claims against Mr. Batista-Carballo and Herlo Trucking, Mr. Bingham made a claim for UIM benefits to Progressive and/or United under the BTB insurance policy.

45. Under the terms of the UIM policy, Progressive and/or United is contractually obligated to pay Mr. Bingham for injuries caused by the February 18, 2019 crash and for which Mr. Bingham was entitled to recover from Mr. Batista-Carballo and Herlo Trucking but which Mr. Batisa-Carballo's and Herlo Trucking's own insurance coverage was not sufficient to pay.

46. Pursuant to the UIM insurance policy, Progressive and/or United is liable to Mr. Bingham for the value of the damages which Mr. Batista-Carballo and Herlo Trucking insurance did not cover, up to the amount of $1,000,000.

47. As required by the UIM insurance contract, Mr. Bingham provided to Progressive and/or United documentation and explanation regarding his damages arising out of the crash.

48. Mr. Bingham requested that Progressive and/or United fairly evaluate his claim and compensate him for his damages under the UIM policy.

49. After receiving Mr. Bingham's documentation and explanation regarding his damages, Progressive and/or United has argued that the value of Mr. Bingham' damages was significantly less than the actual value of Mr. Bingham's economic and noneconomic damages arising out of the crash.

50. After receiving Mr. Bingham's UIM claim, Progressive and/or United offered Mr. Bingham a settlement amount to resolve his UIM claim.

51. The UIM settlement amounts which Progressive and/or United offered to Mr. Bingham were significantly less than the actual value of Mr. Bingham's economic and noneconomic damages arising out of the Crash.

52. Furthermore, the UIM settlement amounts which Progressive and/or United offered to Mr. Bingham were significantly less than the value at which Progressive and/or United had valued Mr. Bingham's economic and noneconomic damages arising out of the Crash.

53. Progressive and/or United did not speak to any of the medical professionals which treated or assessed Mr. Bingham prior to coming to their conclusions regarding Mr. Bingham's UIM claim or prior to making a settlement offer to Mr. Bingham.

54. Progressive and/or United did not speak to Mr. Bingham' family, friends, neighbors, coworkers, or associates prior to arriving at their conclusions regarding Mr. Bingham' UIM claim or prior to making a settlement offer to Mr. Bingham.

55. Progressive and/or United did not fairly consider the medical and other evidence regarding Mr. Bingham' claim prior to coming to their conclusions regarding Mr. Bingham' UIM claim or prior to making a settlement offer to Mr. Bingham.

56. Finally, Progressive and/or United attempted to force Mr. Bingham to negotiate with their agents regarding a compromise UIM settlement amount before revealing the actual amount at which it had valued Mr. Bingham's UIM claim.

57. Progressive's and/or United's actions described above constitute a breach of the UIM contract with their insured Mr. Bingham.

58. Mr. Bingham has suffered damages as a result of Progressive's and/or United's breach of the UIM insurance contract.

## SECOND CAUSE OF ACTION
Breach of Covenant of Good Faith and Fair Dealing

59. Paragraphs 1 through 58 above are realleged and incorporated herein by reference.

60. Under Utah law, Progressive's and/or United's UIM contract includes an unwritten or implied promise that Progressive and/or United will deal with their insureds, including Mr. Bingham, fairly and in good faith.

61. Under Utah law, Progressive's and/or United's UIM contract includes an unwritten or implied promise that Progressive and/or United will not intentionally or purposely do anything that will injure their insureds' right to receive benefits under the contract.

62. Under Utah law, Progressive's and/or United's UIM contract includes an unwritten or implied promise that Progressive and/or United will act consistently with the justified expectations of their insureds, including Mr. Bingham.

63. This implied covenant of good faith and fair dealing requires Progressive and/or United to diligently investigate the facts related to Mr. Bingham' UIM claim and to fairly evaluate the claim and to assist Mr. Bingham in realizing the benefits of the insurance policy.

64. In the absence of a reasonable basis for doing so and with full knowledge of or reckless disregard for the foreseeable consequences of their acts and omissions, Progressive and/or United failed and refused to act in good faith and to deal fairly with Mr. Bingham by, among other things:

- Placing their own economic interests over those of Mr. Bingham;
- Failing to properly and diligently investigate and fairly evaluate Mr. Bingham's claim;

- Refusing to promptly tender the value of Mr. Bingham's claim;

- Refusing to provide any clear justifiable basis for their refusal to tender the value of Mr. Bingham's claim;

- Forcing Mr. Bingham to negotiate with their agents regarding a compromise UIM settlement amount; and

- Forcing Mr. Bingham to file suit to force Progressive and/or United to honor their obligations, and to incur substantial costs and fees as a result.

65. Progressive's and/or United's denial and failure to pay Mr. Bingham's claim was not the result of a good faith mistake.

66. Progressive and/or United knew or should have known that their wrongful acts and omissions were in violation of their obligations under the insurance contract and Utah law.

67. Progressive's and/or United's acts and omissions were willful and malicious or manifested a knowing and reckless indifference toward and a disregard of Mr. Bingham's rights.

68. Mr. Bingham has suffered and continues to suffer damages as a result of Progressive's and/or United's bad faith breach of the covenant of good faith and fair dealing in amounts to be proven at trial.

## TIER DESIGNATION & JURY DEMAND

69. The amount of damages in this matter is more than $300,000.

70. Mr. Bingham demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Bingham prays for judgment against Progressive and/or United as follows:

A. Compensation for general and consequential contract damages, as described above, as allowed by law, and in an amount to be determined at trial;

B. Plaintiff's attorney fees and costs as otherwise allowed by law;

C. Prejudgment interest and post-judgment interest, according to law; and

D. For such other and further relief as the Court deems proper under the circumstances.

DATED this 7th day of November 2022.

PECK BAXTER WATKINS & BAILEY, LLC

*/s/Brandon J. Baxter*
Brandon J. Baxter
*Attorney for Plaintiff*
